OPINION OF THE COURT
 

 Rosenblatt, J.
 

 This appeal calls upon us to consider when a defendant is entitled to the substitution of assigned counsel.
 

 I
 

 Following an undercover police investigation, defendant was charged with two counts of criminal sale of a controlled substance in the second degree. As trial approached, defendant wrote to Supreme Court (Snyder, J.), expressing his dissatisfaction with assigned counsel. He claimed that his attorney was not providing him with documents and not acting in his best interests. Defendant added that he planned to retain new counsel.
 

 A month later, still with the same counsel who had represented him in the 14 months since arraignment, defendant moved to suppress identification testimony. At the
 
 Wade
 
 hearing, the court (Kahn, J.) asked why defendant was handcuffed. Defense counsel stated that defendant had verbally abused him and threatened to “cut” his face. Defendant denied making any threatening comments or gestures, but said that he had no confidence in counsel because he was urging defendant to accept a plea offer of four to eight years. Defendant then asked the court to assign a new attorney.
 

 Justice Kahn rejected defendant’s request and observed that defense counsel was simply discharging his duty in advising defendant to accept the People’s plea offer. In response to defendant’s claims that he could not trust his attorney and that counsel “never does anything in my behalf, never ever,” the court replied, “If you were telling me anything specific about . . . [counsel’s] failure to do his job here, I would not hesitate to replace him, but I’m not hearing anything specific from you about how he’s failed to do his duty, in fact, just to the contrary.” The court observed that counsel had made suppression and speedy trial motions on defendant’s behalf, communicated with the prosecutor, and hired an investigator and a Spanish interpreter to assist in the defense. Defense counsel, the court concluded, was both experienced and conscientious.
 

 The next day, jury selection began before a different judge (Altman, J.). Although the minutes of proceedings that day and
 
 *510
 
 the next were lost, a reconstruction hearing before Justice Altman indicates that the court conducted a colloquy with the parties to discuss security arrangements for defendant and whether defense counsel believed he could continue representing defendant. Defense counsel informed the court that his ability to represent defendant had not been impaired by his client’s threatening conduct. In addition, the court discussed the possibility of seating a uniformed officer between defendant and his counsel at trial, but concluded that it would be less prejudicial for defense counsel to hire a plainclothes investigator to sit between them.
 

 A jury found defendant guilty as charged, and the court sentenced him to concurrent terms of 12 years to life. On appeal to the Appellate Division, defendant argued that Supreme Court’s refusal to furnish him with another lawyer effectively denied him his right to counsel. The Appellate Division affirmed
 
 (see
 
 302 AD2d 256 [2003]), holding that Justice Kahn properly exercised her discretion in denying defendant’s request for new counsel. We affirm.
 

 IL
 

 The Federal and State Constitutions guarantee criminal defendants the right to effective representation by counsel
 
 (see
 
 US Const 6th Amend; NY Const, art I, § 6;
 
 see also People v Stultz, 2
 
 NY3d 277 [2004];
 
 People v Baldi,
 
 54 NY2d 137 [1981]). This right does not begin and end with the assignment of counsel. As we recognized in
 
 People v Medina
 
 (44 NY2d 199, 207 [1978]), trial courts must “carefully evaluate serious complaints about counsel.” This is an ongoing duty. Although defendants have no choice in selecting their assigned counsel,
 
 *
 
 trial courts should substitute counsel when a defendant can demonstrate “good cause”
 
 (id.).
 

 In determining whether good cause exists, a trial court must consider the timing of the defendant’s request, its effect on the progress of the case and whether present counsel will likely provide the defendant with meaningful assistance. Good cause determinations are necessarily case-specific and therefore fall within the discretion of the trial court. In Medina, however, we articulated two clear-cut instances in which a trial court’s fail
 
 *511
 
 ure to find good cause for substitution would amount to an abuse of discretion: first, when an attorney is assigned to represent two defendants between whom there is a conflict of interest and second, when the defense counsel has “not adequately investigated his client’s history of mental disorder”
 
 (id.
 
 at 208). We also emphasized that good cause does not exist when defendants are guilty of delaying tactics or where, on the eve of trial, disagreements over trial strategy generate discord. While the State can guarantee a defendant meaningful representation, it cannot possibly ensure a harmonious relationship between defendants and their attorneys, particularly where defendants are contumacious or violent
 
 (see Morris v Slappy,
 
 461 US 1, 13-14 [1983]).
 

 We revisited
 
 Medina’s
 
 good cause standard in
 
 People v Sides
 
 (75 NY2d 822 [1990]). There, the attorney stated that there had been a total breakdown of communication and trust with the defendant. Although this Court reversed the defendant’s conviction, we did not predicate our holding on that ground. Instead, we concluded that the trial court abused its discretion by conducting only a perfunctory inquiry into defendant’s serious request for the assignment of new counsel. In the face of a potentially irreconcilable conflict between the defendant and counsel, the trial court in
 
 Sides
 
 failed to make even a minimal inquiry or ask anything about the nature of the disagreement or whether it could be resolved.
 

 Evaluated under the standard enunciated in
 
 Medina
 
 and
 
 Sides,
 
 Supreme Court’s denial of defendant’s motion to substitute counsel constituted a proper exercise of discretion. We are satisfied that Justice Kahn’s inquiry into defendant’s request for new counsel was diligent and thorough. The court repeatedly allowed defendant to air his concerns about defense counsel, and after listening to them reasonably concluded that defendant’s vague and generic objections had no merit or substance. As the court observed, defendant was unable to articulate a single specific reason for the court to assign another lawyer.
 

 Further, looking past defendant’s stated objections, there is nothing in the record indicating that defense counsel had a genuine conflict of interest with defendant or that he was in any way deficient in representing him. To the extent defendant’s relationship with counsel soured with the approach of trial, the fault lies wholly with defendant. Defendant and counsel worked together for over a year before defendant, perhaps for reasons
 
 *512
 
 of delay or differences over strategy, manufactured a conflict with counsel on the very eve of trial. As we indicated in
 
 Medina,
 
 tensions arising out of differences over strategy do not compel the trial court to delay the proceedings and bring in a new lawyer. That defendant backed his objections to counsel’s advice with the threat of violence does not alter our analysis. Substitution of counsel is an instrument designed to remedy meaningful impairments to effective representation, not to reward truculence with delay. Defendant’s other contentions are without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges G.B. Smith, Cipaeick, Geaffeo, Read and R.S. Smith concur.
 

 Order affirmed.
 

 *
 

 See People v Brabson
 
 (9 NY2d 173, 181 [1961] [holding that “as long as assigned counsel” have “ability and integrity, the discretion and responsibility for their selection rest with the court, to be exercised free of outside interference”]).